UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

- - - - - - - - - - - - - - - - - - - - - - - - -X
THE HARTFORD COURANT COMPANY,     NOV 10   1 45 PM '03

      Plaintiff,                        U S ...
                           NEW HAVEN, CONN.

AMERICAN LAWYER MEDIA, INC., d/b/a
THE CONNECTICUT LAW TRIBUNE

        Intervening plaintiff,


   -against-

                   No. 3:03 CV 00313 (GLG)

JOSEPH PELLEGRINO,
    CHIEF COURT ADMINISTRATOR
        AND
WILLIAM J. SULLIVAN,
    CHIEF JUSTICE


      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - -X


### RULING ON MOTIONS TO DISMISS

    Plaintiffs in this action of first impression challenge the constitutionality of the judicial rules of the Connecticut Superior Court and state statutes providing for orders to seal Connecticut state court files. Plaintiffs seek injunctive relief. Before this court are defendants' motions for dismissal of the complaint and intervening complaint. For the reasons set forth below, the court **grants** defendants' Motions to Dismiss **(Docs. #10 and #22)**.

I. Factual Background

    On February 21, 2003, plaintiff the Hartford Courant Company

1

["the Courant"] filed a complaint against defendant Joseph
Pellegrino, the Chief Court Administrator of the state courts in
the State of Connecticut ["Judge Pellegrino"]. On June 18, 2003,
American Lawyer Media, Inc. d/b/a the Connecticut Law Tribune
["the Law Tribune"] filed an intervening complaint against Judge
Pellegrino and an additional defendant, William J. Sullivan,
Chief Justice of the Connecticut Supreme Court ["Chief Justice
Sullivan"]. Pursuant to 42 U.S.C. §§ 1983 and 1984, plaintiffs
allege violation of their rights under the First and Fourteenth
Amendments to the United States Constitution and Article First §§
4, 5, 8 and 10 of the Connecticut Constitution resulting from
judicial orders to seal Connecticut state court files.

In the complaint and intervening complaint, plaintiffs
allege that a memo dated June 12, 2000, from Judith Stanulis,
Civil Court Manager to Trial Court Administrators and Judicial
District Chief Clerks [the "Stanulis Memo"], sets forth a
practice of sealing files according to a three tiered system. As
described in the Stanulis memo, Level 1 sealing is used when a
case is statutorily sealed or sealed upon order of the court.
Court personnel may not acknowledge the existence of such cases;
nor do such cases appear on the official docket system or motions
calendar. (Intervening Compl., Exh. B). Level 2 sealing is used
when the court orders all documents of a file sealed, but permits
disclosure of the docket number and the case caption. Under
Levels 1 and 2, the sealing orders are also under seal. Level 3
sealing is used when the court orders that a specific motion,

2

document or pleading be sealed. Plaintiffs do not object to Level 3 sealing.

In the complaint and intervening complaint, plaintiffs allege that Levels 1 and 2 sealing practices abridge their right to access the courts and deny plaintiffs notice and opportunity to intervene in such cases for purposes of challenging the sealing orders. Plaintiffs seek an order with respect to each Level 1 and Level 2 case compelling defendants to provide the names and status of the parties, the docket number of the case and the judicial district where the case is pending, the list of every document in the case file, the nature of the case, and a copy of the order pursuant to which the case was granted either Level 1 or Level 2 sealing status.

Defendants state that in a press release dated February 3, 2003, Chief Justice Sullivan announced that a group of judges had reviewed these sealing practices and agreed that the practice of maintaining secret files under Level 1 should be eliminated. This matter, as well as development of specific criteria for sealing family cases, was referred to the Rules Committee of the Superior Court for its consideration at the judges' annual meeting in June 2003. (Def. Pellegrino's Mem., Ex. B). At oral argument on August 21, 2003, defendants stated that there is only one Level 1 sealed case in the system and that all other pending cases are now Level 2 cases. (Tr. at 12). Additionally, defendants claim that they have provided plaintiffs with electronic information regarding cases sealed under Level 2 which will permit plaintiffs to

intervene on any motions to seal. (Tr. at 12).

However, the Hartford Courant counters that the data concerning the Level 2 cases only lists the name of the case and the docket number, and that it cannot ascertain whether these files are opened or closed; or whether any sealing order was ever issued and if a sealing order was issued what the scope of the order was. (Tr. at 28-29). Furthermore, the Hartford Courant claims that the new rules regarding sealing adopted by the judges in June 2003 do not affect the 10,000 Level 2 cases currently pending. (Tr. at 32).

## II. Discussion

In deciding a motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Easton v. Sundram, 947 F.2d 1011, 1014-15 (2d Cir. 1991), cert. denied, 504 U.S. 911 (1992). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957)(footnote omitted). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 236).

## Disclaimer of Power

Defendants first argue that they lacked the power and

4

authority to provide plaintiffs with the relief they seek. (Def.
Pellegrino's Mem. at 6-7). Citing Connecticut General Statutes §
§ 51-5a and 51-5(b)a, defendants assert that neither Judge
Pellegrino nor Chief Justice Sullivan in their administrative
capacities are empowered by statute to overrule or vacate sealing
orders entered by the Superior Court judges. (Def. Sullivan's
Mot. at 3-4). Their administrative duties comprise mainly of
accounting, personnel, scheduling and record keeping for the
Judicial Department. (Def. Pellegrino's Mem. at 18). Defendants
make reference to Rules Committee of the Superior Court of
Connecticut v. Freedom of Information Comm'n, 192 Conn. 234, 245
(1984), Pamela B. v. Ment, 244 Conn. 296, 326 (1998), and
Blumenthal v. Barnes, 261 Conn. 434, 463 (2002), to support their
argument that administrators' powers are defined and limited by
statute. Thus, defendants assert, that as administrators,
defendants may not amend the rules of practice and provide
plaintiffs with the relief they seek. (Def. Pellegrino's Mem. at
19). Defendants note that only through Judge Pellegrino's
judicial capacity as an Appellate Court judge and through Chief
Justice Sullivan's judicial capacity as a Supreme Court justice
may they review or reverse any sealing orders. (Def. Sullivan's
Mot. at 4).

In response, plaintiffs counter that defendants' disclaimer
of power argument fails because the Level 1 and 2 files were
sealed in accordance with memoranda issued by defendants' office
and that because of the secrecy of these files, it is not known

whether any Superior Court judge ever entered any sealing order
in these cases. (Pl.'s Mem. at 3-5). Plaintiffs argue that
defendants are the proper parties because defendants have the
administrative authority to direct the state court clerks to
disclose the dockets sheets. (Intervening Pl.'s Mem. at 13).

First Amendment

Defendants object to plaintiffs' argument that they have a
first amendment right to the requested docket sheets. Defendants
counter that there is no first amendment guarantee to access
certain court records. (Defs.' Reply Br. at 2). In support,
defendants cite the case Nixon v. Warner Communications, Inc. 435
U.S. 589, 598 (1978), where the court held that "the right to
inspect and copy judicial records is not absolute. Every court
has supervisory power over its own records and files." In U.S. v.
McVeigh, 119 F.3d 806, 812 (10th Cir. 1997), the court notes that
"[t]here is not yet any definitive Supreme Court ruling on
whether there is a constitutional right of access to court
documents and, if so, the scope of such a right." Defendants
opine that there is no definitive case decided in the Second
Circuit. (Defs.' Reply Br. at 5). In support, defendants cite Doe
v. Connecticut Bar Examining Committee, 263 Conn. 39, 66 (2003),
for the proposition that the courts must balance the public's
right to access the courts and the litigants' legitimate privacy
concerns.

Defendants also object to plaintiffs' argument because the
cases they cite involve orders and documents in criminal cases

and the Sixth Amendment right to a public trial, as distinguished
from the present case which involves civil and family law
matters. (Defs.' Reply Br. at 6). Defendants also contest the
relevancy of the plaintiffs' arguments in regard to cited "gag
order" cases, noting that plaintiffs have failed to demonstrate
that the parties in the Level 1 and 2 cases would speak to the
press but for the sealing orders. (Defs.' Reply Br. at 6).

A. Abstention Doctrines

Although the abstention arguments are not the first
objections raised by defendants, the court will consider the
abstention argument first because a decision on this issue could
obviate the need to reach the remaining issues.   The court also
believes that a discussion of the issues in the case of Rosado v.
Bridgeport Roman Catholic Diocesan Corp., 77 Conn. App. 690, 825
A.2d 153 (Conn. App. July 1, 2003), cert. granted, - A.2d -
(Conn. Sept. 18, 2003)(No.17059) is merited because the case is
central to the arguments of both parties in the present
litigation.

In Rosado, the New York Times sought to inspect case files,
which had been settled and withdrawn, alleging sexual abuse by
priests working for the Bridgeport Diocese. The clerk's office
refused inspection because of sealing orders that had been
entered while the cases were still pending.   The New York Times
filed an emergency petition requesting the court to vacate the
sealing and protective orders and to require the filing of
discovery materials. Following receipt of the Times' application,

7

a Superior Court judge granted permission to open a new file because the Times represented the public in seeking access to public records in the court's custody. The Courant, and other newspapers, subsequently filed motions to intervene. Upon review, the Connecticut Appellate Court stated that when the new file was opened, "the trial court's actions had the equivalent effect of restoring the underlying cases to the docket." Rosado, 77 Conn. App. at 718. The Appellate Court concluded that the trial court lacked this authority because Conn. Gen. Stat. § 52-212a imposes a 120 day limit on opening final orders and that sealing orders do not constitute an exception. Id. At 734-735.

The parties disagree as to the relevance of the Rosado case to the matter before this court. The Courant's petition for certification for appeal from the Connecticut Appellate Court has been granted and is limited to the following issue: Did the Appellate Court properly conclude that the trial court improperly granted the application to create a new file?" Rosado v. Bridgeport Roman Catholic Diocesan Corp., Order, 266 Conn. 907 (September 18, 2003).

**Pullman Abstention**

Under the Pullman abstention doctrine, if the plaintiff contests the constitutionality of a state or local law that is unclear and susceptible of a state court determination that may either avoid of modify the constitutional question, the federal court may abstain until the highest court in the state resolves the state law issue. Railroad Commission of Texas v. Pullman Co.,

8

312 U.S. 496, 501 (1941). This doctrine has been extended to §

1983 actions. Harrison v. NAACP, 360 U.S. 167, 177 (1959).

Defendants maintain that the state court files involve "an

important state function and a compelling state interest."

(Def.'s Mem. at 25). Defendants also claim that plaintiffs are

aware that the Connecticut judiciary is reviewing its rules

regarding the sealing policy[1] and that the State legislature is

considering new legislation regarding the sealing process. (Def.

Pellegrino's Mem. at 27). Relying on City of Hartford v. Chase,

942 F.2d 130, 137 (2d Cir. 1991)(Pratt, C.J. concurring),

defendants also characterize sealing court files as a matter of

localized concern because sealing also entails special

requirements regarding maintenance and handling of such files.

Defendants cite the case of Kamasinski v. Walsh, No. CIV.

3:96CV1258(AHN), 1996 WL 684420, *2 (D.Conn. Oct. 9, 1996), for

the proposition that a federal court may abstain from determining

the constitutionality of a statute when the state courts are

deciding whether to apply retroactively an amendment to the

statute. (Def.'s Mem. at 26). Applying this reasoning, defendants

claim the case of Rosado, supra, may be dispositive of a central

issue in this litigation, specifically, the constitutionality of

---

[1] The court notes that the new rules regarding the Identification of
Cases, Motion to File Record Under Seal and Lodging a Record are effective
July 1, 2003. See Connecticut Rules of Court § § 7-4A, 7-4B, and 7-4C.
Additionally new and amended rules regarding Closure of Courtroom in Civil
Cases, Sealing Files or Limiting Disclosure of Documents in Civil Cases,
Closure of Courtroom in Family Matters and Sealing Files or Limiting
Disclosure of Documents in Family Matters are effective July 1, 2003. See
Connecticut Rules of Court § § 11-20, 11-20A, 25-59, and 25-59A.

9

Conn. Gen. Stat. § 52-212a, which provides in relevant part:

> Unless otherwise provided by law and except
> in such cases in which the court has
> continuing jurisdiction, a civil judgment or
> decree rendered in the Superior Court may not
> be opened or set aside unless a motion to
> open or set aside is filed within four months
> following the date on which it was rendered
> or passed.

One of the questions in <u>Rosado</u> is whether the judges of the superior court have authority to reverse sealing orders in cases that went to judgment, were settled or withdrawn after the four month period has elapsed. (Def. Pellegrino's Mem. at 28).

In opposition, plaintiffs counter that <u>Kamasinski</u> does not apply because there is no pending state law issue that is subject to review that would eliminate the federal constitutional issue. First, plaintiffs claim that no statute exists authorizing Level 1 filing. (Pl.'s Mem. at 17). Second, while plaintiffs acknowledged that the Connecticut judiciary has revised its rules regarding sealing, they note that the amended rules have no retroactive effect on existing sealed files. (Pl.'s Mem. at 17-18). Third, plaintiffs do not agree that <u>Rosado</u> is dispositive of this case because interpretation of Conn. Gen. Stat. § 52-212a will not provide the relief which they seek - an order to provide docket sheets for the estimated 10,000 cases sealed under Level 1 and Level 2. (Pl.'s Mem. at 18).

In reviewing this doctrine, the court concludes that the <u>Pullman</u> abstention is inapplicable because a Connecticut Supreme Court ruling in <u>Rosado</u> will not resolve the present litigation.

The question for review by the Connecticut Supreme Court is limited and the Connecticut Supreme Court may not reach the issue of when a court has continuing jurisdiction with respect to sealing and protective orders in place at the time a case is concluded or withdrawn pursuant to the "continuing jurisdiction" exception provided for in Conn. Gen. Stat. § 52-212a. Even if the Connecticut Supreme Court does reach that matter, the holding does not settle the vacatur of orders in open Level 1 and Level 2 cases where sealing orders exist.

**Younger Abstention**

Next, defendants urge the court to abstain under the doctrine enunciated in Younger v. Harris, 401 U.S. 37 (1971), arguing that the "principles of comity and federalism militate in favor of abstention" because of the important state and local interests, the ongoing state proceedings and the unsettled questions of state law. (Def. Sullivan's Mem. At 9). Although Younger was decided in response to an ongoing state criminal proceeding, its reasoning has been extended to civil and administrative proceedings. See Huffman v. Pursue, Ltd., 420 U.S. 592 (1975); Juidice v. Vail, 430 U.S. 327 (1977); Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987). In Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982), the Court established a three prong test for the determination of a Younger abstention to non-criminal proceedings: 1) whether there are important state interests at stake; 2) whether state procedures are available to the federal plaintiff to raise his

11

federal claim in state court; and 3) whether there are ongoing
state proceedings.

In applying the Younger test, the parties disagree as to
whether there are ongoing state proceedings. At oral argument,
defendants argued that Rosado is a pending case for Younger
purposes because any sealing order that remains subject to
reinstatement pursuant to Conn. Gen. Stat. § 52-212a is an
ongoing state proceeding for Younger purposes. (Def.'s Mem. at
31). Plaintiffs argue that defendants have not identified a
particular case in which plaintiffs would intervene; plaintiffs
also object to the reference of sealing files as involving "an
important state interest that concerns the central sovereign
functions of state government." (Pl.'s Mem. at 21).

Not surprisingly, the Courant regards Rosado differently.
Plaintiffs maintain that Rosado has no applicability to the
present litigation because the issue in that case pertained to
the re-opening of closed files, not to cases in which plaintiffs
had filed a motion to intervene. (Tr. at 35). Plaintiffs also
assert that the Younger doctrine does not apply because neither
the Courant nor the Law Tribune were parties to the Level 1 and
Level 2 cases at issue. (Tr. at 50).

In reviewing the applicable law, Younger requires a federal
court to abstain from enjoining a pending state proceeding where
an important state interest is involved and the movant will have
an adequate opportunity to raise his constitutional claims in the
state proceedings. At issue here is whether the federal and state

12

plaintiffs should be considered the same for _Younger_ purposes. In _Doran v. Salem Inn, Inc._, 422 U.S. 922 (1975), three corporations that ran topless bars, operating in the same town and represented by the same counsel, challenged a local ordinance regulating topless dancing. All three corporations filed suit in federal court, and a state criminal prosecution was instituted against one bar that resumed its presentation of topless dancing the day after a preliminary injunction was obtained. The Supreme Court held that abstention was appropriate as to that one bar, but disagreed with the Second Circuit "that all three plaintiffs should automatically be thrown into the same hopper for Younger purposes ...." _Id._ at 928.    While noting that "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger considerations that govern one of them," the Court concluded that the present case was not such a case. _Id._ at 929. "[W]hile respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control, and management. We thus think that each of the respondents should be placed in the position required by our cases as if that respondent stood alone." _Id._; _see also_ _Obeda v. Connecticut Bd. of Registration for Prof'l Eng'rs and Land Surveyors_, 570 F.Supp. 1007, 1012 (D.Conn. 1983)(examining factors of ownership, management and control to determine that state and federal plaintiffs' interests were sufficiently intertwined to warrant _Younger_ abstention where

13

federal plaintiff was president and 95% owner of the state court
litigant, and thus a form of alter ego).

Furthermore, a plaintiff is no under obligation to await the
state court outcome before bringing his § 1983 federal
constitutional claims in a federal forum. *See* <u>Steffel v.
Thompson</u>, 415 U.S. 452, 472-73 (1974)("When federal claims are
premised on 42 U.S.C. § 1983 ... we have not required exhaustion
of state judicial or administrative remedies, recognizing the
paramount role Congress has assigned to the federal courts to
protect constitutional rights."). "[N]owhere in the Younger line
of cases is it even intimated that, while a state prosecution is
pending, a federal court, in an appropriate case between persons
not parties to the state action, may not address issues of
federal law that are simultaneously being litigated in state
court." <u>United States v. Composite State Bd. of Med. Examiners</u>,
656 F.2d 131, 137 (5th Cir.1981)(citations omitted). A
"plaintiff's ability to sue to vindicate his rights in federal
court is not affected by the simultaneous pendency of a state
prosecution against someone else (whether or not the state
defendant is a litigant in a federal action)." <u>Robinson v.
Stovall</u>, 646 F.2d 1087, 1090 (5th Cir. 1981).

Abstention bars relief to a federal plaintiff only in the
situation where the interests of the state defendant and the
federal plaintiff are so "intertwined" as to be considered
identical. But neither a mere "common interest" in the outcome of
federal litigation nor a common effort in pressing it requires

14

abstention as to all plaintiffs. Composite State Bd. of Med.
Examiners, 656 F.2d at 137.

Applying the principals of the above-cited cases, this court
concludes that the Younger doctrine is inapplicable because there
is not a strict identity of the state and federal plaintiffs. In
the state court action, the plaintiffs were the New York Times
and the Hartford Courant, whereas the federal plaintiffs are the
Hartford Courant and the Connecticut Law Tribune. While each
publish newspapers and raise the same constitutional objections,
they have separate ownership, management and control.
Furthermore, a ruling by the Connecticut Supreme Court in the
Rosado case will not provide plaintiffs with the relief they seek
in this litigation.

**Burford Abstention**

The Burford doctrine applies when federal court relief will
disrupt a complex state regulatory scheme and thwart the state's
efforts to centralize judicial review in a unified court of
special competence. Burford v. Sun Oil Co., 319 U.S. 315
(1943)(where administrative system, including discrete
multi-level judiciary, for the regulation, administration and
conservation of Texas's oil and natural gas industry whose impact
upon the state's economy was undisputed). The Court has
elaborated on the Burford doctrine, stating that a federal court
may abstain:

> (1) where there are difficult questions
> of state law bearing on policy problems

15

of substantial public import whose
importance transcends the result in the
case then at bar or (2) where the
exercise of federal review of the
question in a case and in similar cases
would be disruptive of state efforts to
establish a coherent policy with respect
to a matter of substantial public
concern.

New Orleans Public Service, Inc. v. Council of the City of New

Orleans, 491 U.S. 350, 361 (1989)(citation omitted).

Defendants argue that this abstention doctrine applies

because the Connecticut judiciary, its administrators and the

state legislature, as a matter of public policy, must maintain a

comprehensive filing system. (Def. Pellegrino's Mem. at 32).

Defendants state that "[i]t is a central sovereign function of

state government that the state court system assume

responsibility for its own administration, including the

retention of custody and jurisdiction over its files." (Def.

Sullivan's Mem. at 10). Defendants claim that the aforementioned

new rules of court and contemplated legislation addressing the

issue of sealing relate to this function and that federal

intervention is not warranted in light of these efforts. (Def.

Pellegrino's Mem. at 32).

Plaintiffs counter that this court should not abstain

because the new rules regarding sealing adopted by the judges in

June 2003 do not affect the 10,000 Level 2 cases currently

pending. (Pl.'s Mem. at 24). Thus, retention of federal court

jurisdiction will not upset a complex state regulatory scheme.

The court agrees that the <u>Burford</u> abstention doctrine is inapplicable to this litigation because the Connecticut Superior Court rules and statutes do not comprise a complex state regulatory scheme. *See* <u>Alabama Public Service Comm'n v. Southern Railway Co.</u>, 341 U.S. 341 (1951)(abstention warranted where state commission required railroad to continue local service despite financial loss), nor does it involve a procedure unique to Connecticut, such as that involved in <u>Glen 6 Assocs., Inc. v. Dedaj</u>, 770 F.Supp. 225 (S.D.N.Y.1991)(abstention where removal on diversity grounds resulted in application of Federal Rules of Civil Procedure, which differed substantially from New York summary process applicable in state court action). The adjudication of plaintiffs' federal constitutional claims will in no way interfere with the state regulatory system as contemplated by <u>Burford</u>.

## Rooker-Feldman Abstention

Defendants also urge application of this abstention doctrine, which is invoked where the federal district court is called upon to act as a state appellate court. *See* <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

Defendants argue that the sealing orders of the Connecticut Superior Court judges were issued pursuant to various rules of court and statutes, including those governing family and juvenile matters, and that the relief plaintiffs seek is the "overturning

17

and/or violating the orders of several judges of the Connecticut superior court." (Def. Pellegrino's Mem. at 2). Defendants contend that the sealing orders are subject to appellate review as set forth by statute and rule, that plaintiffs' allegations of constitutional violations are "inextricably intertwined" with the state court actions, thus the federal district court is not the appropriate forum for such review. (Def. Pellegrino's Mem. at 33-34).

Plaintiffs counter that review in the Connecticut state courts is not possible because the existence of Level 1 cases is secret and only the caption name and docket number is available for Level 2 cases, and that this lack of case detail precludes appealing sealing orders, denying them a full and fair opportunity to litigate the sealing orders. (Pl.'s Mem. at 25 & 28). Thus, plaintiffs reason the abstention doctrine under Rooker-Feldman is inapplicable here because there are no issues in this case that are "inextricably intertwined" with questions already decided in a state court case. (Pl.'s Mem. at 28). Plaintiffs also cite Dow Jones & Co. v. Kaye, 90 F. Supp.2d 1347 (S.D. Fla. 2000), for the proposition that as non-parties, they are not required to exhaust state remedies before bringing a claim in federal court. (Intervening Pl.'s Mem. at 5).

Under this doctrine, "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature," Gentner v. Shulman, 55 F.3d 87, 89 (2d Cir. 1995), and federal review, if any, can occur only by way of

18

a certiorari petition to the Supreme Court. <u>Rooker</u>, 263 U.S. at 416. "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." <u>Hachamovitch v. DeBuono</u>, 159 F.3d 687, 693 (2d Cir. 1998).

This doctrine also prohibits district court review of state court judgments to claims that are "inextricably intertwined" with a state court's determinations. <u>Kropelnicki v. Siegel</u>, 290 F.3d 118, 128 (2d Cir. 2002). A claim is inextricably intertwined with the state court judgment if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 25 (1987)(Marshall, C.J. concurring). "A party has no obligation to attempt to intervene in a state court action when it is not named in the suit in order to preserve its rights." <u>U.S. v. Owens</u>, 54 F.3d 271, 274 (6th Cir. 1995).

The facts of this case do not fit neatly into one of the above described abstention doctrines. Therefore, the next step is to determine whether the plaintiffs have a constitutional right to the civil docket sheets for the Level 1 and Level 2 cases and whether the defendants have the authority and power to provide such information.

The public and the press have a right to attend trials in civil matters and to inspect and copy judicial records. <u>Nixon v. Warner Communications, Inc.</u>, 435 U.S. 589 (1978). Public scrutiny over the court system promotes confidence in the fair

administration of justice, as well as affording citizens a form
of legal education. Richmond Newspapers, Inc. v. Virginia, 448
U.S. 555, 572 (1980). "[T]raditional Anglo-American jurisprudence
distrusts secrecy in judicial proceedings and favors a policy of
maximum public access to records of judicial tribunals." Wilson
v. Science Applications International Corp., 52 Cal. App.4th
1025, 1030 (1997). The guarantee of open public proceedings in
civil trials applies to the sealing of court documents. Publicker
Industries, Inc. v. Cohen, 733 F.2d 1059, 1070-1071 (3rd Cir.
1984). The press has standing to challenge a protective order for
abuse or impropriety. In Re Continental Illinois Securities
Litigation, 732 F.2d 1302, 1309-1310 (7th Cir. 1984). However,
the right of access is not absolute. Press-Enterprise Co. v.
Superior Court of California for Riverside County, 478 U.S. 1, 9
(1986).

    While there is ample case law regarding the public's and the
media's rights to judicial documents in civil matters, there is
little reported on the right of access to the court's docketing
reports. There is one reported case addressing this issue, where
the Eleventh Circuit held that the maintenance of a dual
docketing system by the Middle District of Florida was an
unconstitutional infringement on the public and press's qualified
right of access to criminal proceedings. U.S. v. Valenti, 987
F.2d 708 (11th Cir. 1993), cert. denied sub nom. Times Pub. Co.
v. U.S. District Court for Middle District of Florida, 510 U.S.
907 (1993). Until Valenti, the clerk maintained a "sealed docket

completely hid from public view the occurrence of closed pretrial
bench conferences and the filing of in camera pretrial motions."
Id. at 715. After Valenti, the Middle District of Florida changed
its docketing procedures in criminal and civil cases to notify
the public on the public docket of *in camera* proceedings that had
been held, and of sealed documents that had been filed. U.S. v.
McCorkle, 78 F.Supp.2d 1311, 1314 (M.D. Fla. 1999). The Valenti
opinion does not address nor offer any guidance to the trial
court on the retrospective effect, if any, of its holding. Nor
did this court locate any other cases examining the public's
right of access to civil case detail where a dual docketing
system was maintained.

In the present litigation, plaintiffs assert this right of
access to the aforementioned Level 1 and Level 2 cases. If the
defendants were to disclose the requested data, they would in
effect be altering or reconsidering existing sealing orders
previously entered by other judges. Any modification of such an
order would necessarily involve balancing the public's right of
access to court records and documents against the Level 1 and
Level 2 parties' rights to privacy and their confidence in the
finality and reliability of the administration of their cases.

The power of one judge to vacate a sealing order duly made
by another judge is limited by statute. Conn. Gen. Stat. § 51-
164x(a) provides:

> Any person affected by a court order which
> prohibits any person from attending any
> session of court, except any session of court

21

conducted pursuant to section 46b-11, 46b-49, 46b-122 or 54-76h or any other provision of the general statutes under which the court is authorized to close proceedings, whether at a pretrial or trial stage, shall have the right to the review of such order by the filing of a petition for review with the Appellate Court within seventy-two hours from the issuance of such court order.

Section 46b-11 provides for closed hearing and records in family relations matters[2], § 46b-49 provides for closed hearings on matters involving minor children[3], § 46b-122 provides for closed hearings in juvenile matters[4], and § 54-76h provides for private

---

[2] Section 46b-11 provides: Any case which is a family relations matter may be heard in chambers or, if a jury case, in a courtroom from which the public and press have been excluded, if the judge hearing the case determines that the welfare of any children involved or the nature of the case so requires.  The records and other papers in any family relations matter may be ordered by the court to be kept confidential and not to be open to inspection except upon order of the court or judge thereof for cause shown.

[3] Section 46b-49 provides: When it considers it necessary in the interests of justice and the persons involved, the court shall, upon the motion of either party or of counsel for any minor children, direct the hearing of any matter under this chapter and sections 17b-743, 17b-744, 45a-257, 46b-1, 46b-6, 47-14g, 51-348a and 52-362 to be private.  The court may exclude all persons except the officers of the court, a court reporter, the parties, their witnesses and their counsel.

[4] Section 46b-122 provides: All matters which are juvenile matters, as provided in section 46b-121, shall be kept separate and apart from all other business of the Superior Court as far as is practicable, except matters transferred under the provisions of section 46b-127, which matters shall be transferred to the regular criminal docket of the Superior Court.  Any judge hearing a juvenile matter may, during such hearing, exclude from the room in which such hearing is held any person whose presence is, in the court's opinion, not necessary, except that in delinquency proceedings any victim of

22

proceedings in youthful offender cases.[5]  This court is not aware
of any Connecticut statute that would permit defendants in their
administrative capacities to set aside an order issued by a trial
court judge.

Conn. Gen. Stat. § 51-5a sets forth the duties and powers of
the chief court administrator. It provides that the Chief Court
Administrator:

> (1) Shall be the administrative director of
> the judicial department and shall be
> responsible for the efficient operation of
> the department, the prompt disposition of
> cases and the prompt and proper
> administration of judicial business;   (2)
> shall meet periodically at such places and
> times as he may designate with any judge,
> judges, or committee of judges, and with the
> probate court administrator to transact such
> business as is necessary to insure the
> efficient administration of the judicial
> department;   (3) may issue such orders,
> require such reports and appoint other judges
> to such positions to perform such duties, as
> he deems necessary to carry out his

------

the delinquent act, the parents or guardian of such victim and any
victim advocate appointed pursuant to section 54-221 shall not be
excluded unless the judge specifically orders otherwise.


[5] Section  54-76h provides:  All of the proceedings except
proceedings on the motion under section 54-76c had under the
provisions of sections 54-76b to 54-76n, inclusive, shall be private
and shall be conducted in such parts of the courthouse or the building
wherein court is located as shall be separate and apart from the other
parts of the court which are then being held for proceedings
pertaining to adults charged with crimes.  If such defendant is
committed while such examination and investigation is pending, before
trial, during trial or after judgment and before sentence, those
persons in charge of the place of detention shall segregate such
defendant, to the extent of their facilities, from defendants over the
age of eighteen years charged with crime.

responsibilities;  (4) may assign, reassign
and modify assignments of the judges of the
superior court to any division or part of the
superior court and may order the transfer of
actions under sections 51-347a and 51-347b;
and (5) may provide for the convening of
conferences of the judges of the several
courts, or any of them, and of such members
of the bar as he may determine, for the
consideration of matters relating to judicial
business, the improvement of the judicial
system and the effective administration of
justice in this state.
 (b) The Chief Court Administrator may
establish reasonable fees for conducting
searches of court records.  No federal, state
or municipal agency shall be required to pay
any such fee.

Conn. Gen. Stat. § 51-1b provides that:

(a) The chief justice of the supreme court
shall be the head of the judicial department
and shall be responsible for its
administration. (b) The chief justice shall
appoint a Chief Court Administrator who shall
serve at the pleasure of the chief justice.

Neither statute provides for either defendant to vacate

sealing orders. In Pamela B. v. Ment, 244 Conn. 296 (1998), the

Connecticut Supreme Court examined the scope of the chief court

administrator's duties in a case seeking to compel defendants to

remedy the alleged constitutional and statutory violations of

certain procedures regarding orders of temporary custody of minor

children who are the subjects of neglect petitions. The court

recognized the chief court administrator's power to make rules

"relating to the management of the internal institutional

machinery of the court system." Id. at 326. The chief court

administrator cannot "formulate or interfere with rules of

24

practice and procedure that directly control the conduct of
particular litigation." Id.  This court did not locate any other
cases examining the scope of the chief justice's administrative
power.

In a dissenting opinion, Justice Marshall stated

> It is not without significance that most of
> the provisions of the Bill of Rights are
> procedural. It is procedure that spells much
> of the difference between rule by law and
> rule by whim or caprice. Steadfast adherence
> to strict procedural safeguards is our main
> assurance that there will be equal justice
> under law. . . . And Mr. Justice Frankfurter
> has said that the history of American freedom
> is, in no small measure, the history of
> procedure.

Board of Regents of State Colleges v. Roth, 408 U.S. 564, 589-590
(1972). In the absence of any enabling statute or any binding
case law conferring such authority on either defendant, this
court concludes that neither defendant has the authority nor the
power to provide the plaintiffs with the relief they seek.

Accordingly, it is hereby ORDERED that defendants' Motions
to Dismiss **(Docs. #10 and #22)** are granted.

SO ORDERED.

Date: November 3, 2003.
      Waterbury, Connecticut.

GERARD L. GOETTEL,
United States District Judge

25