## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE HARTFORD COURANT COMPANY | : | CIVIL ACTION NO. 3:03CV0313 (RNC) |
| | : | |
| Plaintiff, | : | |
| | : | |
| AMERICAN LAWYER MEDIA, INC. d/b/a THE CONNECTICUT LAW TRIBUNE | : | |
| | : | |
| Intervening Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH PELLEGRINO, CHIEF COURT ADMINISTRATOR and WILLIAM J. SULLIVAN, CHIEF JUSTICE | : | |
| | : | |
| Defendants. | : | MAY 9, 2005 |

### PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DENY PARTIAL SUMMARY JUDGMENT OR GRANT A CONTINUANCE

### PRELIMINARY STATEMENT

In opposing plaintiffs' Rule 56(f) motion to defer consideration of summary judgment until discovery is had, defendants advance two fundamentally incorrect positions: (a) the discovery now underway "will not reveal anything germane to the issues presented on summary judgment" (Opp. 2), and (b) summary judgment can be entered "solely upon this court's review and construction of the sealing orders presented to it," without disclosing even the terms of those orders to plaintiffs. (Opp. 7.) Neither position has any merit. The discovery not yet provided will undeniably be relevant to a proper interpretation of the 42 sealing orders that defendants contend "explicitly" seal docket sheets. And, even if the records already provided *in camera*

could support a legal determination of this narrow issue, partial summary judgment cannot

properly be entered on the basis of secret documents, with no disclosures at all to plaintiffs.

The Second Circuit already has held that the public has a constitutional right to know

what goes on in the courts of Connecticut, and specifically that this includes the right to inspect

court docket sheets. As in *United States v. Alcantara*, 396 F.3d 189, 203 (2d Cir. 2005), any

unfounded restriction of this right of access "is not harmless when viewed from the perspective

of the public and the press," but rather "harms the integrity of [Connecticut's] judicial system as

a whole." Unfortunately, instead of construing their authority to minimize past errors and repair

the public's right of access, defendants continue to advocate positions designed to perpetuate an

unconstitutional veil of secrecy. Defendants' current claim, that their ability to withhold certain

docket sheets from the public should *itself* be decided entirely on the basis of secret evidence,

only compounds the problem. It is "alien to our entire jurisprudence" for a court to "function *ex*

*parte* in private without benefit of the adversary process," as defendants now request. *Military*

*Audit Project v. Bush*, 418 F. Supp. 876, 878 (D.D.C. 1976).

> The adversary system is a well-tested safeguard for preserving the
> integrity of the judicial process. It is the duty of a judge wherever
> possible to resolve rights of citizens upon facts and arguments that
> are presented in an adversary context exposed to public view with
> all the protections fair hearing and due process provide.

*Id.* The request for pre-discovery summary judgment should plainly be denied.

## ARGUMENT

### A.    The Still Outstanding Discovery Will Be Directly Germane to the Issues Raised On Summary Judgment

Plaintiffs have met their burden under Rule 56(f) to demonstrate the facts they need to

obtain, the steps they have taken to obtain them, why the facts are not yet in their possession, and

how the facts are essential to a proper resolution of the motion for partial summary judgment.

The Opposition attempts to sidestep this demonstration by arguing that discovery will reveal nothing germane about whether the 42 alleged sealing orders at issue expressly "seal the docket sheets." (Opp. 2.) The contention is plainly incorrect.[1]

The discovery not yet provided by defendants includes, *inter alia*, inspection of the alleged sealing orders themselves (or at a minimum disclosure of the operative language that supposedly commands the sealing of dockets), disclosure of the dates of entry of the orders, identification of the judges issuing them, and production of documents and transcripts referring to the sealing orders. These disclosures will go directly to the "nub of ...[the] motion for summary judgment." (Opp. 3.) For example, disclosure of the orders is necessary for plaintiffs even to be able to develop positions as to the meaning of the words used in them, to interpret the terms of the orders in light of the terms used in the Connecticut Practice Book (*e.g.*, Pltf. Mem. 5 at n.2), or to compare the language of the orders at issue to language used in orders *previously* construed by clerks as requiring Level 1 sealing, but made public once this lawsuit began. These and other useful lines of analysis can only be developed after discovery.

Indeed, limited disclosures provided by defendants thus far suggest that the 42 alleged sealing "orders" are likely to prove far less expansive than portrayed in defendants' cursory motion. To take one example, the file for a case previously categorized as Level 1 indicates that it was sealed by the clerk based only upon an "in chambers" instruction. Reply Declaration of

---

[1] *See* Declaration of Stephanie S. Abrutyn ("Abrutyn Dec.") ¶¶ 5-6; Pltf. Mem. 4-7. It bears emphasis that only *partial* summary judgment is sought. Even should the Court find that orders exist which "explicitly" require sealing the dockets in the 42 cases at issue, discovery will be needed to determine whether such orders are unenforceable, which they may well be if entered without public notice and opportunity to be heard and without adequate findings of fact. *Cf., United States v. Alcantara*, 396 F.3d 189, 201 (2d Cir. 2005) (vacating judgments where the district court failed both to provide advance notice in the public docket of its intention to conduct proceedings *in camera* and to make findings on the record that such closure was "essential to preserve higher values and . . . narrowly tailored to preserve that interest.") (quoting *United States v. Haller*, 837 F.2d 84, 87 (2d Cir. 1988)). Discovery relating to the names of judges may also be needed to fashion an appropriate remedy.

Stephanie S. Abrutyn ¶¶ 3-4. Such a docket notation reflects an apparently unconstitutional process with no public notice or hearing, and the brief notation does not "explicitly" require the sealing of the docket sheet itself, as the Second Circuit said is necessary. *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 98 (2d Cir. 2004). At a minimum, such records raise issues that plaintiffs should be entitled to address in responding to the motion for partial summary judgment, but are unable to do so until discovery is provided by defendants.

With no real answer to the obvious importance of the outstanding discovery, defendants resort to word games, claiming discovery should not be needed because the "interpretation of the sealing orders is a legal one, not a factual one." (Opp. 4.) This distinction is completely beside the point. Just as the Court's *legal* conclusion about the scope of an order must be based on the *fact* of the language it contains, plaintiffs' position on the proper interpretation of an order cannot meaningfully be developed and asserted without even knowing what the order says.

Defendants are equally off-base in advancing the bootstrap argument that discovery is pointless because they are powerless to disclose the sealing orders, names of judges and other information requested. They claim that the sealing orders *themselves* are a part of the file ordered to be sealed, so the orders supposedly preclude the release of *any* information about the orders. (Opp. 5.) Much of the discovery sought by plaintiffs, however, would not require defendants to violate any order, even one as broad as they allege.

Initially, there is nothing in the record to suggest—let alone meet defendants' burden of proof—that the 42 sealing orders actually require both the terms of the orders and the names of the judges who signed them to be kept secret, nor is there any reason to believe that any such order would be constitutional and enforceable. *See United States v. Alcantara,* 396 F.3d at 201 (vacating sentence imposed on a convicted criminal because the sentencing hearing was not held

in open court and no factual findings were made to justify closure). Like all judicial orders, the sealing orders "belong to the public" and must be open to inspection. *Pepsico v. Redmond*, 46 F.3d 29, 31 (7th Cir. 1995).

In exceptional circumstances, some courts have been permitted to file *findings* in support of an order under seal, but only the part of the findings that must be kept secret to protect some transcendent value may be sealed, and the court "must make every effort to explain as much of its decision as possible on the public record to enable an interested person to intelligently challenge the decision." *Washington Post v. Robinson*, 935 F.2d 282, 289 n.9 (D.C. Cir. 1991); *see also Pepsico*, 46 F.3d at 30 (even the judge "who enjoined publication of details of the hydrogen bomb's construction managed to explain his decision to the public"). If such limits exist on the sealing of a court's findings, *a fortiori* the terms of a court's orders should not be sealed absent express findings establishing the most compelling need for a secret mandate.[2]

In opposing this Rule 56(f) motion, defendants do not even suggest this standard is met, nor did they claim the orders contain such explicit findings and limitations when previously resisting disclosure of the names of the judges who signed the orders:

> **The Court**: I will say this: I don't understand why you would be concerned about the name of the judge. The privacy interest that could justify a sealing order would be a privacy interest of the litigant, presumably, not the judge. I don't know why you would be fussy about that. If a judge entered a sealing order, so be it.

---

[2] Even in the rare instances when a court's findings are allowed to be sealed, their existence must still be listed on a public docket. *See United States v. Haller*, 837 F.2d 84, 87 (2d Cir. 1988) (allowing the findings in a decision underlying a sealing order to be sealed, but requiring "the fact that a sealing order had been entered must be docketed"); *Washington Post v. Robinson*, 935 F.2d 282, 289 (D.C. Cir. 1991) (court must "place the fact that it has sealed [a] plea agreement on the public docket"); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 575 (8th Cir. 1988) (although it was appropriate to seal the court's findings, it was improper to seal the docket sheets showing the existence of the findings). In defendants' view both the sealing orders and the docket could be sealed, making public oversight absolutely impossible – plainly an impermissible result even if facts could be presented to demonstrate this is what the 42 orders actually require. *Cf. Haller*, 837 F.2d at 87; *Robinson*, 935 F.2d at 289; *Gunn*, 855 F.2d at 575.

\*\*\*

> Can you tell me why you would have a problem with the plaintiff[s] seeing the name of the judge?
>
> **Ms. Danehy Cox**: Because it's our position that we don't want that to be the case at this point.
>
> **The Court**: Why? I don't mean to be impertinent, but I just don't understand why.

Transcript of 9/22/04 Telephone Conference at 27-28. Like the name of the judge, defendants have apparently decided to resist disclosing the sealing orders themselves, not because it would contravene a judicial order to do so, but because they just "don't want that to be the case at this point." *Id*. at 28.[3]

The suggestion that the *terms* of a sealing order cannot even be disclosed also runs counter to the Second Circuit's expectation of the very steps that would be taken on remand. The issues remanded for this Court to address include specifically whether "actual judicial orders" exist that "explicitly seal docket sheets." *Pellegrino*, 380 F.3d at 97, 98. The Second Circuit said it could not resolve this issue on the record then before it, and remanded the matter specifically because "[d]iscovery would illuminate this issue." *Id.* There is no basis for defendants to argue now this discovery the Second Circuit found important is not needed and cannot be provided.

Plaintiffs' discovery requests seek the *facts* upon which defendants base their claim that the sealing orders bar them from disclosing docket sheets. Even in the unlikely event that the orders explicitly require they not be disclosed, defendants do not explain how providing through interrogatory responses the operative language constituting the orders would violate them. Plainly, summary judgment should be denied until the outstanding discovery is provided.

---

[3] In fact, there appears to be no reason why defendants cannot provide the requested information with limited redactions to protect the privacy interests of the parties involved in these cases.

That defendants' motion for summary judgment is fatally premature is underscored by the very fact that the Court has not yet had the opportunity to rule on whether they are entitled to withhold, *inter alia*, either the orders or their operative language. This discovery has been requested (*see* Pltf. Mem. at 5-6 & n.2; Abrutyn Dec. ¶ 5, Ex. C) and will shortly be the subject of a motion to compel.[4] Defendants will then bear the burden of demonstrating that plaintiffs are *not* entitled to this discovery, which if provided would clearly be both relevant and material to the summary judgment they seek. At a minimum, the Court should delay resolution of defendants' motion until it has addressed the scope of discovery required.

**B.    Summary Judgment May Not be Entered on a Secret Record**

If in fact the orders allegedly sealing the dockets also specify that the orders themselves cannot be disclosed, as the Opposition asserts, a more fundamental problem precludes summary judgment at this time: Summary judgment cannot be based on an *in camera* review of evidence in the manner defendants request. *See Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 67 (1st Cir. 1984) (vacating and remanding grant of summary judgment based on documents not available to opposing party); *Allende v. Schultz*, 605 F. Supp. 1220, 1226 (D. Mass 1985) ("summary judgment may not be granted on the basis of materials to which the party opposing summary judgment is denied access"); *Kinoy v. Mitchell*, 67 F.R.D. 1, 15 (S.D.N.Y. 1975) ("Our system of justice does not encompass *ex parte* determinations on the merits of cases in civil litigation.").

In *Abourezk v. Reagan*, 785 F.2d 1043 (D.C. Cir. 1986), *aff'd*, 481 U.S. 1 (1987), then-Judge Ginsburg, writing for the District of Columbia Circuit, flatly rejected the notion that courts

---

[4] Plaintiffs will timely move to compel on or before the May 20, 2005 deadline for this motion.

are allowed to make decisions on the basis of *ex parte* evidence, absent the most extraordinary

circumstances:

> It is a hallmark of our adversary system that we safeguard party
> access to the evidence tendered in support of a requested court
> judgment. The openness of judicial proceedings serves to preserve
> both the appearance and the reality of fairness in the adjudications
> of United States courts. It is therefore the firmly held main rule
> that a court may not dispose of the merits of a case on the basis of
> *ex parte, in camera* submissions.

*Id.* at 1060-61. *Abourezk* identified three narrow categories of cases in which courts may deviate

from this "firmly held main rule," but none applies directly here: (1) *in camera* review may be

used to support a ruling when a party invokes an evidentiary privilege; (2) *in camera* review may

support a determination of the merits where the state secrets privilege is properly asserted, so

long as the government discloses as much of the national security material as it can "without

compromising the privilege;" (3) *in camera* consideration of evidence is allowed if expressly

authorized by statute.[5]

Nor can defendants justify their approach by analogy to procedures used in Freedom of

Information Act ("FOIA") litigation, where a statute authorizes *in camera* review.[6] Courts

---

[5] *Abourezk*, 785 F.2d at 1061. Even where an assertion of privilege requires an initial assessment of evidence *in camera*, a judgment cannot be based on secret evidence. If the court determines that the privilege applies, the other side must be afforded access to the information. *Id.* If the court finds the privilege does apply, then the court may not rely on such privileged information in making its determination. *Id.* "In either case, no party will be faced . . . with a decision against him based on evidence he was never permitted to see and rebut." *Id.* Plaintiffs agreed to the Court's *in camera* review with the understanding that they too would have an opportunity to engage in discovery and never contemplated that the merits would be decided on the basis of an *in camera* review of the orders alone.

[6] Defendants cite *Hudson River Sloop Clearwater v. Dep't of Navy*, 891 F.2d 414 (2d Cir. 1989), as supposedly supporting the absence of any need for discovery, but the citation is inapposite. In *Hudson River*, the plaintiffs needed to prove that the Navy had officially and *publicly* stated that nuclear weapons would be deployed at a certain site in order to prevail on the merits of their claim. *Id.* at 422. The Second Circuit concluded that any unofficial statements sought by plaintiffs would have been insufficient to create a genuine issue of material fact. *Id.* The Second Circuit further concluded that if there had been any official statements, they would "by definition . . . have to have been matters of public record," and therefore available to plaintiffs independent of mandatory disclosure by

repeatedly have recognized that the "lack of knowledge by the party seeking disclosure [in a

FOIA action] seriously distorts the traditional adversary nature of our legal system's form of

dispute resolution,"[7] and therefore have required a great deal of information to be disclosed

*before* deciding a FOIA dispute.

The disclosures required to be provided to a FOIA plaintiff include the production of an

index with detailed descriptive information about the document at issue, including its date, the

names of its authors and recipients, a general description of the nature of its content, and a

detailed statement of the specific grounds for withholding it.  *See, e.g., Vaughn v. Rosen*, 484

F.2d 820, 824 (D.C. Cir. 1973); *Brown v. FBI*, 658 F.2d 71, 74 (2d Cir. 1981).  These disclosures

are essential to "afford the FOIA requester a meaningful opportunity to contest, and the district

court an adequate foundation to review, the soundness of the withholding." *Wiener v. FBI*, 943

F.2d 972, 977-78 (9th Cir. 1991) (quoting *King v. Dep't of Justice*, 830 F.2d 210 (D.C. Cir.

1987)).  Courts in FOIA litigation have specifically rejected the notion, advanced by

defendants here, that *in camera* examination can be a substitute for the government's obligation

to provide to its adversaries such detailed information relating to the dispute. *Abourezk*, 785

F.2d at 1061; *Weiner*, 943 F.2d at 979; *Doyle v. FBI*, 722 F.2d 554, 556 (9th Cir. 1983).

---

defendants. Id. *Hudson River* actually confirms by contrast that discovery is needed before summary judgment is taken up here, because the "public record" has been kept from public view.  The information sought through discovery remains in defendants' sole and exclusive control.

[7] *Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir. 1973); *see also, Brown v. FBI*, 658 F.2d 71, 74 (2d Cir. 1981); *Church of Scientology, Int'l v. United States Dep't of Justice*, 30 F.3d 224, 228 (1st Cir. 1994); *Wiener v. FBI*, 943 F.2d 972, 978 (9th Cir. 1991).  As has been explained, disclosures are required because the party seeking a document under FOIA must otherwise "rely upon his adversary's representations as to the material withheld, and the court is deprived of the benefit of informed advocacy to draw its attention to the weaknesses in the withholding agency's arguments.  It is simply 'unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party interested in the case.'" *Wiener*, 943 F.2d at 977 (quoting *Vaughn*, 484 F.2d at 825)).

Here, too, defendants should be compelled in advance of summary judgment to provide as much information as possible about the existence and scope of each order, even where its language otherwise purports to preclude disclosure of the order itself.[8] It is, at best, premature to address the motion for partial summary judgment before resolving the discovery disputes, and it would be improper to grant that motion solely on the basis of an *in camera* review of the orders.

## CONCLUSION

For each and all the foregoing reasons, and the reasons set forth in plaintiffs' initial moving papers, the Court should deny defendants' motion for partial summary judgment or, in the alternative, order a continuance until defendants have provided discovery of the facts essential to plaintiffs' opposition.

May 9, 2005

PLAINTIFF,

THE HARTFORD
COURANT COMPANY

By: _David A. Schulz / DJK_

David A. Schulz
Federal Bar No. ct15417
Levine Sullivan Koch & Schulz L.L.P.
230 Park Avenue, Suite 1160
New York, NY 10169
Tel: (212) 850-6103
Fax: (212) 850-6299
dschulz@lskslaw.com

*Of Counsel:*
Stephanie S. Abrutyn, Esq.
Tribune Company
220 E. 42d Street, Suite 400
New York, NY 10017
Tel: (212) 210-2885
Fax: (212) 210-2883

Paul Guggina, Esq.
Federal Bar No. ct23409
Tyler Cooper & Alcorn
CityPlace – 35th Floor

---

[8] Redacting portions of the orders to maintain the privacy interests intended to be protected by a sealing order should be required when an order does not direct that it must remain sealed. If it is determined that no information at all may be released about a specific order, alternative measures will need to be explored, such as ordering discovery about the circumstances surrounding the entry of the order (to determine if public notice was provided and necessary facts found), directing defendants to communicate with the judge who signed the order to develop an appropriate remedy consistent with the Second Circuit's mandate, or other steps. Because defendants have made no showing that such restrictions actually bar the discovery sought, these other avenues need not be explored at this time

Hartford, CT 06103-3488
Tel: (860) 725-6200
Fax: (860) 278-3802
pguggina@tylercooper.com

INTERVENING PLAINTIFF,

AMERICAN LAWYER MEDIA, INC.
d/b/a CONNECTICUT LAW TRIBUNE

By: _____
        Daniel J. Klau
Federal Bar No. ct17957
Pepe & Hazard LLP
Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel. (860) 522-5175
Fax: (860) 522-2796
dklau@pepehazard.com

## **CERTIFICATION**

THIS IS TO CERTIFY THAT a copy of the foregoing was mailed via first class mail,

postage prepaid, this 9th day of May, 2005, to:

> Maureen Danehy Cox, Esq.
> Carmody & Torrance LLP
> 50 Leavenworth Street
> P.O. Box 1110
> Waterbury, CT 06721-1110
> Counsel for Defendants

> By _____
>    Daniel J. Klau
>    Federal Bar No. ct17957